**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

|   |   |   |
|---|---|---|
| RICHARD E. PERSAUD, | : | |
| | : | |
| Plaintiff, | : | Civ. No. 22-5087 (CCC) (JSA) |
| | : | |
| v. | : | |
| | : | **OPINION & ORDER** |
| WELL PATH (MEDICAL SERVICES), et al. | : | |
| | : | |
| Defendants. | : | |

---

**CECCHI, District Judge.**

Pro se plaintiff Richard E. Persaud ("Persaud" or "Plaintiff"), a pretrial detainee at Hudson County Correctional Center ("HCCC"), seeks to commence a lawsuit pursuant to 42 U.S.C. § 1983 stemming from allegedly unconstitutional conditions related to COVID-19 protocols at HCCC and restricted access to the HCCC law library. ECF No. 1. Persaud also moves to proceed *in forma pauperis* ("IFP"). ECF No. 1-1. For the reasons below, Persaud's motion to proceed IFP is granted, and his Complaint is dismissed without prejudice.

**I.      IFP**

The Prison Litigation Reform Act of 1995, Pub. L. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (Apr. 26, 1996) (the "PLRA"), establishes requirements for prisoners who are attempting to bring a civil action IFP. Specifically, a prisoner seeking to file a civil action IFP must submit an affidavit, including a statement of all assets, stating that the prisoner is unable to pay the fee. 28 U.S.C. § 1915(a)(1). The prisoner also must submit a certified copy of his inmate trust fund account statement for the six-month period immediately preceding the filing of the complaint. 28 U.S.C. § 1915(a)(2). Persaud has complied with the PLRA and demonstrated

indigence.  ECF No. 3.  Accordingly, IFP status is appropriate, and Persaud's IFP motion is granted.

The Court will now proceed to screen the Complaint, as required by 28 U.S.C. § 1915A(a).

## II.    THE COMPLAINT

### A.    Factual Allegations

The Complaint contains the following factual allegations, which, for screening purposes, the Court will accept as true.

On May 18, 2022, Persaud "was placed on the unit E-4-North around inmates who appeared sick, and didn't wear any masks."  ECF No. 1 at 5 (quotations omitted).  When trying to clean his area, he learned that "[t]he mop heads were soiled in dirt and had a very bad odor," and there was no dust pan.  *Id.* (quotations omitted).  He could not clean properly before unpacking because "cleaning chemicals [were] only allowed for 'clean up/inmate workers' not all detainees." *Id.* at 5–6.  He also "tried to obtain a mask from the officer, but he advised me that he didn't have any at the time, and why didn't I save my original mask?"  *Id.* at 6 (quotations omitted).

A few weeks later, on approximately June 8, 2022, Persaud "began to feel ill with severe body aches; sneezing and coughing."  *Id.* (quotations omitted).  He "advised the nurse during medical pass (when medication is passed out on the unit) who advised [him] that she would call [him] down, but didn't."  *Id.*  He "wrote several 'medical forms' and placed them in the 'medical box' in hopes to receive medical assistance, but again, [he] didn't."  *Id.*  "Instead, [he] was forced to suffer for several days as COVID-19 just continued to spread throughout the (60) plus detainees who were also housed on E-4-North with [him]."  *Id.* (quotations omitted).  Persaud "never wrote on the kiosk because many detainees who did expressed that they either don't reply (medical) or by the time they do many weeks to months later th[eir] assistance is still ineffective."  *Id.* (capitalization omitted).

Persaud asserts he is also "not afforded 'Law Library' to prepare a proper defense, and the jail instead rather uses it for 'college classes and etc.'" *Id.* Further, "the alternative that the jail provides does not afford [him] the proper ability to do such," and now he "suffer[s] long term effects to [his] health as well as criminal matter." *Id.*

### B.    The Claims

Persaud asserts claims against Well Path (Medical Services) ("Well Path"); Oscar Aviles, HCCC Director; and John Does 1-10, employees of HCCC (collectively, "Defendants"), for (1) failing to provide proper/adequate medical services; (2) failing to prevent the spread of COVID-19; and (3) failing to provide access to the law library. *Id.* at 4–5.  He also asserts a claim against John Does 1–10 for failing to provide proper cleaning supplies to prevent the spread of COVID-19. *Id.* at 5.  Persaud asks the Court to compel HCCC "to correct th[eir] unconstition[al] conditions during this deadly pandemic," and seeks "any other compensation the courts deem fit." *Id.* at 6.  The Complaint does not explain Well Path's relationship to HCCC, but it appears to be a provider of medical services that operates within HCCC.

## III.    DISCUSSION

### A.    Screening Standard

The PLRA requires district courts to review complaints in civil actions filed by prisoners. *See* 28 U.S.C. § 1915A(a).  District courts must dismiss any case that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  *See* 28 U.S.C. §§ 1915A(b) & 1915(e)(2)(B).  "The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (citing *Allah v. Seiverling*,

229 F.3d 220, 223 (3d Cir. 2000)).  That standard is set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

To survive the court's screening for failure to state a claim, the complaint must allege "sufficient factual matter to show that the claim is facially plausible." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation and internal quotation marks omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  Pro se pleadings, as always, will be liberally construed.  *See Haines v. Kerner*, 404 U.S. 519, 520 (1972). Nevertheless, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

**B.    Section 1983**

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of constitutional rights.  Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983.  Thus, to state a claim for relief under § 1983, a plaintiff must allege first, the violation of a right secured by the Constitution or laws of the United States, and second, that the alleged deprivation was committed or caused by a person acting under color of state law.  *See*

4

*Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011) (citations omitted); *see also West v. Atkins*, 487 U.S. 42, 48 (1988).

A private or government health-care provider like Well Path cannot be held liable under § 1983 for the unconstitutional acts of its employees under a theory of *respondeat superior*. *See Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583–84 (3d Cir. 2003). Well Path is subject to liability under § 1983 only if it "had a policy or custom that caused [Plaintiff's] deprivation of a constitutional right." *Defreitas v. Montgomery Cty. Corr. Facility*, 525 F. App'x 170, 176 (3d Cir. 2013) (citing *Monell v. Dep't of Social Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978); *see also Perry v. Well-Path*, No. 20-2542, 2021 WL 229398, at *4 (E.D. Pa. Jan. 22, 2021) ("[I]n order to hold a private health care company like Well-Path liable for a constitutional violation under § 1983, a prisoner must allege the provider had 'a relevant . . . policy or custom, and that the policy caused the constitutional violation [he] allege[s].'" (alterations in original and citation omitted)).

A supervisor may also not be held vicariously liable for the actions of subordinates under § 1983. *See, e.g.*, *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015). Thus, to adequately plead a plausible § 1983 claim against Aviles, Persaud must plead facts which, if proven, would show that Aviles was personally involved in the alleged wrongs. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207–08 (3d Cir. 1988). This can generally be done in one of two ways. First, Aviles can be liable if he enacted a policy, practice, or custom that was the "moving force" behind an alleged constitutional violation. *See City of Canton v. Harris*, 489 U.S. 378, 389 (1989). Second, Aviles may be held liable if he "participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juv. Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004). Knowledge, for these purposes, means "contemporaneous

knowledge of the offending incident or knowledge of a prior pattern of similar incidents." *C.H. ex rel. Z.H. v. Oliva*, 226 F.3d 198, 202 (3d Cir. 2000).

### C.    Analysis

Construing Persaud's complaint liberally, he appears to assert claims for (1) unconstitutional conditions of confinement on the basis of exposure to the COVID-19 virus and restricted access to cleaning supplies; (2) deliberate indifference to his serious medical needs on the grounds that he was ill and did not receive adequate treatment; and (3) denial of access to the courts based on his restricted access to the law library.

### 1.    Conditions of Confinement

The Due Process Clause of the Fourteenth Amendment affords protections to pretrial detainees "at least as great as the Eighth Amendment protections available to a convicted prisoner," *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983); *see also Natale*, 318 F.3d at 581, and is violated when a pretrial detainee is subjected to punishment that is not "reasonably related to a legitimate governmental objective." *See Hubbard v. Taylor*, 538 F.3d 229, 236 (3d Cir. 2008) (citation omitted). The Eighth Amendment requires prison officials to provide "humane conditions of confinement." *See Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 256 (3d Cir. 2010) (citation omitted); *see also Farmer v. Brennan*, 511 U.S. 825, 832 (1994). "For an alleged deprivation to rise to the level of an Eighth Amendment violation, it must 'result in the denial of the minimal civilized measure of life's necessities.'" *Betts*, 621 F.3d at 256 (quoting *Farmer*, 511 U.S. at 835) (internal quotation marks and citation omitted). Thus, "prison officials violate an inmate's Eighth Amendment rights when they deprive her of a single identifiable human need such as food, warmth, or exercise." *Chavarriaga*, 806 F.3d at 226 (internal quotation marks and citation omitted); *see also Betts*, 621 F.3d at 256 (inmates must receive "adequate food, clothing, shelter, and medical care," and prison officials must "take reasonable measures to guarantee the safety of

the inmates" (citation omitted)). "A failure to provide minimally civil conditions of confinement to pre-trial detainees violates their rights against punishment without due process of law." *Roman v. DeMarco*, No. 18-8010, 2019 WL 452736, at *2 (D.N.J. Feb. 5, 2019) (citing *Reynolds v. Wagner*, 128 F.3d 166, 173–74 (3d Cir. 1997)).

"Unconstitutional punishment typically includes both objective and subjective components." *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007). "The objective component requires an inquiry into whether the deprivation was sufficiently serious and the subjective component asks whether the officials acted with a sufficiently culpable state of mind." *Id.* (cleaned up). To meet the objective component, the conditions must "cause inmates to endure such genuine privations and hardship over an extended period of time, that the adverse conditions become excessive in relation to the purposes assigned to them." *Hubbard*, 538 F.3d at 233 (internal quotation marks and citation omitted). To meet the subjective component, a detainee must assert that prison officials acted with "deliberate indifference," meaning that they consciously disregarded a serious risk to the detainee's health or safety. *See Wilson v. Seiter*, 501 U.S. 295, 298–99, 302 (1991); *Stevenson*, 495 F.3d at 68 ("[A] particular measure amounts to punishment when there is a showing of express intent to punish on the part of detention facility officials, when the restriction or condition is not rationally related to a legitimate non-punitive government purpose, or when the restriction is excessive in light of that purpose." (alteration in original)) (quoting *Rapier v. Harris*, 172 F.3d 999, 1005 (7th Cir. 1999)).

The Third Circuit addressed COVID-19 in the prison setting in *Hope v. Warden York County Prison*, 972 F.3d 310 (3d Cir. 2020), explaining that when evaluating a detention facility's protocols, "courts must acknowledge that practical considerations of detention justify limitations on many privileges and rights," and "ordinarily defer" to the expertise of prison officials in responding to COVID-19 unless there is "substantial evidence in the record to indicate that the

officials have exaggerated their response" to the situation. *Id*. at 326 (internal quotation marks and citation omitted).

The gravamen of Persaud's complaint is that upon arriving at HCCC, inmates "appeared sick" and were not wearing masks; on one occasion there were no masks available when he requested one; he could not clean his area before unpacking his things because he did not have access to cleaning supplies; mopheads were soiled and there were no dustpans; and detainees did not have access to cleaning chemicals, rather, the chemicals were only made available to "clean up/inmate workers." ECF No. 1 at 5–6. These allegations, even if true, do not support a finding that Defendants acted with a culpable state of mind, nor do the allegations rise to the level of "cruel and unusual punishment" necessary to state a claim for unconstitutional conditions of confinement.

At the outset, to the extent Persaud claims his constitutional rights were violated merely by having been exposed to the virus, or by being at an increased risk of exposure to the virus, the allegation is insufficient because exposure alone does not establish a constitutional violation. *See Hope*, 972 F.3d at 329 (rejecting petitioners' arguments that exposure to COVID-19 was per se unconstitutional and that the Government must eliminate their risk of exposure to comply with constitutional mandates); *Bennett v. Aviles*, No. 22-7003, 2022 WL 17887227, at *3 (D.N.J. Dec. 23, 2022) ("Millions, of course, have contracted COVID both inside and outside of prison walls. Exposure alone does not establish that prison officials committed a constitutional violation.").

Aside from potential exposure, Persaud's allegations that he was told a mask was not available once when he requested it, that a mop was soiled and had a bad odor, and that detainees do not have access to cleaning chemicals do not establish that prison officials failed to adequately protect him or consciously disregarded a serious risk to his health or safety. Persaud does not allege, for example, that no COVID-19 testing, quarantining, or facility cleaning was occurring.

8

Further, imperfections in procedures—particularly in the challenging environment of a detention center—do not, without more, amount to unconstitutional conditions of confinement or punishment. *See Hope*, 972 F.3d at 330 (noting the "challenges inherent in the detention setting"); *Whitley v. Albers*, 475 U.S. 312, 319 (1986) ("It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock."); *Pumba v. Kowal*, No. 22-2082, 2022 WL 2805520, at *5 (E.D. Pa. July 18, 2022) ("Pumba alleges that Sergeant Kowal permitted a pod worker who tested positive for COVID-19 to clean Pumba's cell block without wearing a mask and presumably exposing Pumba to COVID-19. These allegations are insufficient to allege a plausible constitutional claim that Sergeant Kowal failed to adequately protect him from exposure to COVID-19."); *Chapolini v. City of Phila.*, No. 22-284, 2022 WL 815444, at *15 (E.D. Pa. Mar. 17, 2022) ("Chapolini also does not sufficiently allege that prison officials at [the facility] knew of and disregarded an excessive risk to his health and safety. Instead, he only states that he contracted COVID-19 and that he likely got it because quarantine protocols at [the facility] were either inadequate or improperly followed. This is also inadequate to state a plausible claim because his COVID-19 diagnosis alone is an insufficient basis upon which to establish a constitutional violation."); *Cooper v. Miller*, No. 20-2430, 2022 WL 4654852, at *7 (M.D. Pa. Sept. 30, 2022) ("Plaintiff's disagreement with the steps that have been taken by Defendants at [the facility] to mitigate the risk of his exposure to COVID-19 is simply insufficient to plausibly allege a constitutional violation.").

Moreover, a policy that restricts detainee access to cleaning chemicals is not, on its face, excessive in relation to HCCC's legitimate interest in maintaining safety while managing the spread of COVID-19. *See Bell v. Wolfish,* 441 U.S. 520, 535, 540 (1979) (institutional security

and effective facility management are valid governmental objectives that can justify restrictions on pretrial detainees); *Youngberg v. Romeo*, 457 U.S. 307, 321 (1982) (under the Due Process Clause, "whether respondent's constitutional rights have been violated must be determined by balancing his liberty interests against the relevant state interests").

Finally, even if Persaud had alleged a constitutional violation on the basis of his conditions of confinement, his § 1983 claim would fail because he has not plausibly alleged that Defendants acted with a culpable state of mind or were personally involved in the alleged deprivation. Indeed, he asserts only conclusory allegations that fail to link any defendant to the alleged wrongdoing. *See* ECF No. 1 at 4–6. In short, the Complaint, as drafted, does not establish that Persaud's conditions of confinement were cruel and unusual or amounted to unconstitutional punishment. Accordingly, this claim must be dismissed.

### 2.    Deliberate Indifference to Serious Medical Need

The Due Process Clause of the Fourteenth Amendment applies to pretrial detainees' claims of inadequate medical care. *Bocchino v. City of Atl. City*, 179 F. Supp. 3d 387, 402–03 (D.N.J. 2016). To state such a claim, a pretrial detainee must allege: (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Natale*, 318 F.3d at 582.

A "serious" medical need is: (1) "one that has been diagnosed by a physician as requiring treatment"; (2) "one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention"; or (3) one for which the denial of treatment would result in the "unnecessary and wanton infliction of pain" or "a life-long handicap or permanent loss." *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987). When evaluating this element, courts consider factors such as "the severity of the medical problems, the potential for harm if the

medical care is denied or delayed and whether any such harm actually resulted from the lack of medical attention." *Maldonado v. Terhune*, 28 F. Supp. 2d 284, 289 (D.N.J. 1998).

Persaud's Complaint, as pleaded, does not contain facts establishing that he suffered from a "serious" condition. He pleads only that on June 8, 2022 he "began to feel 'ill' with severe body aches[,] sneezing and coughing" and that he "was forced to suffer for several days." ECF No. 1 at 6. These allegations, without more, are insufficient. Persaud does not state what medical treatment he felt he needed and did not receive, nor does he allege that he tested positive for COVID; that he was "diagnosed by a physician as requiring treatment"; that he had an underlying condition or extreme symptoms such that, if he did have COVID, the need for hospitalization or other intervention would have been obvious to a layperson; or that the alleged denial of treatment resulted in "a life-long handicap or permanent loss." *Monmouth Cnty. Corr. Institutional Inmates*, 834 F.2d at 347. To the contrary, the most plausible inference to be drawn is that he suffered temporary, flu-like symptoms beginning on June 8, 2022, and lasting for "several days," after which he recovered. ECF No. 1 at 6. *Graham v. Aviles*, No. 22-5760, 2022 WL 16949131, at *3 (D.N.J. Nov. 14, 2022) ("To be sure, COVID-19 (if Graham in fact contracted COVID-19) may be a serious illness, particularly when coupled with underlying conditions that exacerbate the risk, but temporary symptoms, without more (e.g., an allegation of advanced age, an immunocompromised state, or another underlying health condition putting the detainee at an increased risk of severe illness), are insufficient to establish a 'serious' medical need."). The Court readily acknowledges that flu-like symptoms are unpleasant, but experiencing such symptoms and then recovering within a few days, without more, does not state a viable claim, as many courts have found.[1]

---

[1] *See also, e.g.*, *Est. of Lillis by & through Lillis v. Correct Care Sols., LLC*, No. 16-03038, 2018 WL 1569752, at *7 (D. Colo. Mar. 30, 2018) ("'[F]lu-like symptoms' do not generally rise to the level of severity necessary to constitute a 'serious medical need.'"); *Kennedy v. Dallas Police Dep't*,

Even assuming Persaud sufficiently alleged a serious medical need, he has failed to plausibly allege that Defendants were deliberately indifferent to that need. Deliberate indifference exists when a defendant "knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. This standard requires that Defendants were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and drew that inference. *Natale*, 318 F.3d at 582 (citation omitted). As currently pleaded, Persaud's Complaint does not plausibly allege that Defendants, even if they were aware of his symptoms, inferred or believed that Persaud faced a substantial risk of serious harm without additional treatment. Accordingly, Persaud has not alleged a viable claim that Defendants knew of and were deliberately indifferent to an excessive risk to Persaud's health. *See*, *e.g.*, *Est. of Cheney ex rel. Cheney v. Collier*, 560 F. App'x 271, 274 (5th Cir. 2014) (prison nurse's inattention to prisoner's symptoms after he "complained of the flu and reported and exhibited flu-like symptoms including paleness, body fatigue, chills, lack of appetite, and one or two instances of vomiting," did not "rise to the level of an 'obvious' or apparent risk to [the prisoner's] health sufficient to infer that she acted with deliberate indifference"). Accordingly, as Persaud has failed to allege deliberate indifference to a serious medical need, the claim must be dismissed.

---

2007 WL 30260, at *4 (N.D. Tex. Jan. 4, 2007) ("flu-like symptoms" did not constitute "serious harm" necessary to establish an Eighth Amendment violation); *Liggins v. Barnett*, No. 4-00-cv-90080, 2001 WL 737551, at *6 (S.D. Iowa May 15, 2001) ("The court has found no case in which a plaintiff suffering from flu-like symptoms . . . has been held to have had a serious medical need."); *Schwartz v. Jones*, No. 99-3269, 2000 WL 1859012, at *3 (E.D. La. Dec. 18, 2000) (failure to provide prisoner with aspirin for flu-like symptoms did not give rise to a federal constitutional claim for denial of medical care); *Ware v. Fairman*, 884 F. Supp. 1201, 1206 (N.D. Ill. 1995) (describing flu as "not serious"); *Haberstick v. Nesbitt*, No. 97-6523, 1998 WL 472447, at *3 (E.D. Pa. July 29, 1998) (flu-like symptoms could not form the basis of a deliberate indifference claim where prisoner presented no evidence that flu was a serious medical need).

### 3.    Access to the Courts

A claim asserting restrictions on access to a prison law library is considered an "access-to-the-courts" claim under the First Amendment.  *See Diaz v. Holder*, 532 F. App'x 61, 63 (3d Cir. 2013) (per curiam); *Welch v. Cnty. of Burlington*, No. 21-4526, 2021 WL 3418680, at *6 n.2 (D.N.J. Aug. 5, 2021) (an inmate has no "freestanding right to a law library"); *Turner v. Shoemaker*, No. 21-1552, 2021 WL 4948092, at *2 (M.D. Pa. Oct. 25, 2021) ("Prisoner plaintiffs may state a due process claim upon which relief may be granted for lack of access to a law library, but the relevant inquiry is whether the lack of access has impeded the plaintiff's access to the courts.").

Inmates have a constitutional right to "adequate, effective, and meaningful" access to the courts.  *Bounds v. Smith*, 430 U.S. 817, 822 (1977); *see also Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008) ("Under the First and Fourteenth Amendments, prisoners retain a right of access to the courts.").  A prima facie claim of denial of access to courts requires allegations that (1) prison officials impeded plaintiff's access to courts and (2) plaintiff suffered actual injury from his ability to access the courts.  *Lewis v. Casey*, 518 U.S. 343, 351 (1996); *Rivera v. Monko*, 37 F.4th 909, 915 (2022).  To allege actual injury, the plaintiff must allege that he lost an opportunity to pursue a nonfrivolous or arguable underlying claim and that there is no other available remedy for the lost claim.  *Rivera*, 37 F.4th at 915 (citing *Monroe*, 536 F.3d at 205).  Put another way, the plaintiff must establish that the "denial of access to legal materials caused a potentially meritorious claim to fail."  *Id.*

Here, Persaud does not plausibly allege he suffered an actual injury or that any defendant was involved in the alleged constitutional violation.  He makes only the conclusory assertion that he is "not afforded 'Law Library' to prepare a proper defense" and "now [he] suffer[s] [l]ong term effects to [his] . . . criminal matter."  ECF No. 1 at 6 (quotation marks omitted).  This statement is

insufficient to support a viable access-to-the-courts claim. Accordingly, the claim must be dismissed. *See Saunders v. Criley*, No. 22-741, 2022 WL 17812447, at *2 (M.D. Pa. Dec. 19, 2022) ("Saunders fails to allege actual injury to his access to courts, as he fails to allege what underlying claim he was unable to pursue . . . . Saunders's conclusory statement that he 'has been unable to pursue legal claims in court' is not sufficient to plead actual injury."); *Lawson v. City of Phila.*, No. 22-3672, 2022 WL 17155767, at *7 (E.D. Pa. Nov. 22, 2022) ("Lawson has not stated a plausible access to courts claim because he has not alleged an actual injury resulting from his inability to use the law library. He has not described anywhere in his Amended Complaint what 'nonfrivolous' or 'arguable' claim he has lost as a result of his inability to access the law library or its materials. Without allegations of an actual injury, any claim based on the denial of his ability to use the prison law library is not plausible."); *Turner*, 2021 WL 4948092, at *2 ("Turner alleges that prison law library access is necessary 'to aid in the defense to his case,' but he does not allege an actual injury to his access to the courts. He does not make any specific allegations as to how the lack of library access has hindered the defense of his case or how it will hinder him in the future.").

For these reasons, Persaud's claims are dismissed for failure to state a claim pursuant to § 1915(e)(2)(B)(ii). However, because the Court cannot state that amendment would be futile, this dismissal is without prejudice to the filing, within 60 days, of a proposed amended complaint. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002) (leave to amend claims dismissed on screening should generally be granted unless amendment would be inequitable or futile).

## IV.    CONCLUSION

For the reasons stated above, Persaud's motion to proceed IFP (ECF No. 1-1) is granted, and his Complaint (ECF No. 1) is dismissed without prejudice. Persaud may file a proposed amended complaint within 30 days.

Accordingly, **IT IS** on this 22nd day of August, 2025,

**ORDERED** that, pursuant to 28 U.S.C. § 1915(b) and for purposes of account deduction only, the Clerk shall serve a copy of this Order by regular mail upon the Attorney General of the State of New Jersey and the warden of the Hudson County Correctional Center; and it is further

**ORDERED** that Persaud is assessed a filing fee of $350.00 and shall pay the entire filing fee in the manner set forth in this Order pursuant to 28 U.S.C. § 1915(b)(1) and (2), regardless of the outcome of the litigation; and it is further

**ORDERED** that pursuant to *Bruce v. Samuels*, 136 S. Ct. 627, 632 (2016), if Persaud owes fees for more than one court case, whether to a district or appellate court, under the Prison Litigation Reform Act (PLRA) provision governing the mandatory recoupment of filing fees, Persaud's monthly income is subject to a simultaneous, cumulative 20% deduction for *each* case a court has mandated a deduction under the PLRA; *i.e.*, Persaud would be subject to a 40% deduction if there are two such cases, a 60% deduction if there are three such cases, etc., until all fees have been paid in full; and it is further

**ORDERED** that pursuant to 28 U.S.C. § 1915(b)(2), in each month that the amount in Persaud's account exceeds $10.00, the agency having custody of Persaud shall assess, deduct from Persaud's account, and forward to the Clerk of the Court payment equal to 20% of the preceding month's income credited to Persaud's account, in accordance with *Bruce*, until the $350.00 filing fee is paid. Each payment shall reference the civil docket numbers of the actions to which the payment should be credited; and it is further

15

**ORDERED** that Persaud's motion to proceed *in forma pauperis* (ECF No. 1-1) is **GRANTED**; and it is further

**ORDERED** that the complaint (ECF No. 1) is **DISMISSED WITHOUT PREJUDICE**; and it is further

**ORDERED** that Persaud may file an amended complaint within thirty (30) days of the date this Order is entered; and it is further

**ORDERED** that the Clerk of the Court shall serve a copy of this Order and the accompanying Opinion upon Persaud, together with a blank copy of the Civil Rights Complaint form, by regular U.S. mail, and shall **CLOSE** this file.

 

*/s/ Claire C. Cecchi*
HON. CLAIRE C. CECCHI
United States District Judge
